IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC CITIZEN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 06-523 |
| | ) Judge Bates |
| CLERK, UNITED STATES DISTRICT | ) |
| COURT FOR THE DISTRICT OF | ) |
| COLUMBIA, | ) |
| | ) |
| Defendant | ) |
| _____ | ) |

## DEFENDANT'S MOTION TO DISMISS

Defendant, by her undersigned attorneys, hereby moves, pursuant to Rule

12(b)(6), Federal Rules of Civil Procedure, to dismiss.

The ground for this motion is that the complaint fails to state a claim upon

which relief can be granted.

In support of this motion, the Court is respectfully referred to the

Memorandum in Support of Defendant's Motion to Dismiss and in Opposition to

Plaintiff's Motion for Summary Judgment, filed herewith.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

_Brian G. Kennedy_
Sheila M. Lieber
Brian G. Kennedy (D.C. Bar 228726)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7204
Washington, D.C.  20530
Tel.: (202) 514-3357
Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC CITIZEN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-523 |
| | ) | Judge Bates |
| CLERK, UNITED STATES DISTRICT | ) | |
| COURT FOR THE DISTRICT OF | ) | |
| COLUMBIA, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Introduction

Plaintiff Public Citizen contends that the Deficit Reduction Act, Pub. L. No. 109-171, 120 Stat. 4, violates the Bicameralism clause of the Constitution, article I, section 7, clause 2, because it purportedly did not pass both houses of Congress. Pl's SJ Mem. at 2-5, 6, 8-10.[1]

However, plaintiff concedes that an enrolled bill bearing the text of the Deficit Reduction Act as it now appears in the *Statutes at Large* was signed by both the Speaker of the House and President pro tempore of the Senate and later signed by the President.  Pl's SJ Mem. at 5; Complaint ¶¶ 15, 16.  That necessary concession is fatal to Public Citizen's case.

---

[1] Plaintiff Public Citizen files lawsuits in federal court.  Complaint ¶ 5. Section 10001 of the Deficit Reduction Act, 120 Stat. 4, 183, increased the fee Public Citizen must pay when it files a suit.  *Id.* ¶ 1.

Once an enrolled bill has been attested to by the Speaker of the House and President of the Senate – as both sides agree is the case with the Deficit Reduction Act – "its authentication as a bill that has passed Congress should be deemed complete and unimpeachable." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892) ("*Marshall Field*"). Therefore, *Marshall Field* dictates that plaintiff's complaint be dismissed.

<u>Argument</u>

I.     The Attestation And Authentication Of The Enrolled Bill As <u>Having Passed Congress Is Complete And Unimpeachable</u>

A.     <u>Plaintiff's Claim Is Foreclosed By *Marshall Field*</u>

Public Citizen's claim is foreclosed by Marshall Field. *Marshall Field* answers the precise question of "'the nature of the evidence' the Court may consider in determining whether a bill actually passed Congress." *United States v. Munoz-Flores*, 495 U.S. 385, 391 n.4 (1990), *quoting Marshall Field*, 143 U.S. at 670. *Marshall Field* held that when an enrolled bill has been attested to by the Speaker of the House and President of the Senate, "its authentication as a bill that has passed Congress should be deemed complete and unimpeachable." 143 U.S. at 672. "The respect due to coequal and independent departments requires the judicial department to act upon that assurance and to accept, as having passed congress, all bills authenticated in the manner stated . . . ." *Id.*

Since Public Citizen concedes that the Act it challenges has been so authenticated, *see* Pl's SJ Mem. at 5; Complaint ¶¶ 15, 16, the complaint fails to state a claim upon which relief can be granted and should be dismissed.[2]

B.     Plaintiff's Attempts To Distinguish
       *Marshall Field* Are Without Merit

Plaintiff attempts to distinguish *Marshall Field* by arguing that, in supposed contrast to this case, "*Marshall Field* did not concern a bicameralism violation because no party questioned that both the House and Senate had passed the same version of the bill." Pl's SJ Mem. at 17.  However, while Marshall Field contended that <u>a</u> bill had passed both houses in the same form, it was not the bill enrolled by Congress, presented to and signed by the President, and published in the *Statutes at Large* as the Tariff Act of 1890, 26 Stat. 567 (1890).  The Tariff Act, Marshall Field contended, had passed <u>neither</u> house in the form in which it was nevertheless enrolled into law.  *See Marshall Field*, 143 U.S. at 668-69.[3]

---

[2] Descriptions of *Marshall Field* in later Supreme Court decisions on other issues differ on whether the enrolled bill rule of *Marshall Field* is or is not a rule of justiciability.  *Compare Baker v. Carr*, 369 U.S. 186, 214 (1962) (*Marshall Field* cited as instance of claim that was not justiciable) *with Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 943 (1983) (*Marshall Field* viewed as merits resolution).  The controlling point of *Marshall Field* is that an enrolled bill is "complete and unimpeachable" evidence that the Act passed both houses of Congress.  Whether that holding is labeled a justiciability holding or a merits holding, plaintiff's claim fails and should be dismissed.

[3] Marshall Field contended that what would have been "shown by the congressional records of proceedings, reports of committees of each house, reports of committees of conference, and other papers printed by authority of congress," 143 U.S. at 668-69, was that a bill originated in the House and contained a rebate for a

(continued...)

Public Citizen nevertheless attempts to distinguish *Marshall Field* as a case that addressed and decided only an issue under the Journal clause of the Constitution, article I, section 5, rather than the Bicameralism clause. Pl's SJ Mem. at 13-17. That's wrong. Marshall Field recognized and cast its principal argument on this point[4] as a bicameralism argument. For example, Marshall Field's Reply Brief on this point of the argument began: "Under the Seventh Section of Article First, of the Constitution, the validity of a law depends upon its having passed the House of Representatives and the Senate . . . ." Reply Brief for

---

[3](...continued)
tobacco tax; that, as one of hundreds of Senate amendments, the tobacco tax rebate was deleted when the Senate passed the bill; that the Senate receded from that deletion of the tobacco tax rebate amendment in conference; that each house receded in conference from many other provisions; that both houses accepted the bill as it came out of conference; and that the tobacco tax rebate provision was omitted from the Act as enrolled. Brief for Appellants at 3, 7, 48, 59, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891); Reply Brief for Appellants at 4, 50-52, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891).

The point of Marshall Field's argument was not that the conference committee bill that it alleged did pass both houses with the tobacco tax rebate was law instead of the enrolled bill without the rebate, but rather that there was no valid law at all. (Marshall Field was trying to avoid a tariff on clothing, *see* 143 U.S. at 662-63, rather than to obtain a tobacco tax rebate.) The Bicameralism clause requires that "before [a bill] becomes a law" it must be "presented to the President." The alleged conference committee bill that Marshall Field contended had passed both houses was not so presented.

[4] Marshall Field's briefs addressed several major issues other than the one the parties are discussing here, including delegation of legislative authority, *see* 143 U.S. at 680-84, the scope of congressional authority to enact legislation to promote the general welfare, *see id.* at 694-96, and severability, *see id.* at 696-97 (a point we also address below).

Appellants at 47, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891).[5]
And the Supreme Court likewise recognized the centrality of the bicameralism
argument, beginning its discussion of the dispute by quoting the Bicameralism
clause, 143 U.S. at 667.

The Journal clause was raised by Marshall Field as a potential evidentiary
way station to proving the underlying alleged substantive violation of the Bicamer-
alism clause. Marshall Field argued that, in order to determine whether the
Bicameralism clause had been violated, the courts should at least be able to
examine the journals of the two houses to impeach the enrolled bill because, after
all, the Constitution itself requires Congress to keep such journals. *See* 143 U.S. at
670. In rejecting that argument, the Court was not holding, as Public Citizen's
argument seems to suppose, that it was <u>only</u> the journals that cannot be considered
to impeach the enrolled bill. Rather, the Court was holding that <u>even</u> the journals
constitutionally required by Article I, section 5, cannot be used to contradict an
authenticated enrolled act. *See* 143 U.S. at 672-73. That *Marshall Field*'s holding
was not limited to rejecting the relevance of the journals only is also evident from
the Court's decision in *Leser v. Garnett*, 258 U.S. 130, 137 (1922) (Brandeis, J.),
which found *Marshall Field* "applicable" in a case that did not involve any question
under the Journal clause, but did involve, as this case does, whether "official notice"

---

[5] *See also* Brief for Appellants at 14-21, 48, *Marshall Field & Co. v. Clark*, No.
1,052 (U.S. Oct. Term 1891); Reply Brief for Appellants at 3, 47-52, *Marshall Field
& Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891).

of legislative action that has been "duly authenticated" is "conclusive upon the courts."[6]

In addition to relying on the journals, the *Marshall Field* plaintiffs also cited and relied upon, as does Public Citizen, other documents that the Constitution does not require be kept, *i.e.*, "the congressional records of proceedings, reports of each house, reports of committees of conference, and other papers printed by authority of congress." 143 U.S. at 669. The *Congressional Record*, for example, was established in 1873 (as Public Citizen acknowledges, Pl's SJ Mem. at 10), and was thus available to and relied upon by Marshall Field[7] just as it is relied upon here by Public Citizen. The *Congressional Record* is, of course, "separate and distinct" from the "official journals" of the House and Senate. *Gregg v. Barrett*, 771 F.2d 539, 541 (D.C. Cir. 1985). "The Journal -- and not the *Congressional Record* -- is the official record of the proceedings of the House." House Journal Main Page, http://www.gpoaccess.gov/hjournal/index.html (visited, May 17, 2006).

To be sure, the *Congressional Record* excerpts and other documents relied upon by plaintiff are "official" in some sense, indeed in many senses. But, as plaintiff also recognizes, some official documents are "less official" (Pls' SJ at 8)

_____

[6] *Accord, United States v. Thomas*, 788 F.2d 1250, 1253-54 (7th Cir.) (*Marshall Field* applied to sustain Secretary of State's promulgation of Sixteenth Amendment, despite variances in language among States' instruments of ratification), *cert. denied*, 479 U.S. 853 (1986); *United States v. Sitka*, 845 F.2d 43 (2d Cir. 1988) (same), *cert. denied*, 488 U.S. 827 (1987).

[7] Transcript of Record at 23, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term 1891) (6 of 11 listed exhibits excerpts of *Congressional Record*).

than others, and this matters when they are in conflict.  Indeed, Public Citizen's

own case demands that it be able to impeach documents that it argues (Pl's SJ

Mem. at 8) are official publications, the Statutes at Large and the slip laws, both of

which are competent evidence of the law, 1 U.S.C. §§ 112, 113, and in both of which

the Deficit Reduction Act appears.

*Marshall Field* certainly recognized that for many purposes the journals – as

constitutionally required records – could be relied upon and admitted as evidence,

for example, to prove the time at which an Act of Congress took effect.  143 U.S. at

678-79.  And even less official records of Congress can be referred to by the courts to

find and construe the law.  Courts cite the *Congressional Record* every day, and

properly so.  The distinction was explained in *United States National Bank v.*

*Independent Insurance Agents*, 508 U.S. 439, 455 n.7 (1993): "The *Marshall Field*

doctrine concerns " 'the nature of the evidence' the Court [may] consider in

determining whether a bill had actually passed Congress," . . .; it places no limits on

the evidence a court may consider in determining the meaning of a bill that has

passed Congress."  (*Quoting United States v. Munoz-Flores*, 495 U.S. 385, 391 n.4

(1990), *quoting Marshall Field*, 143 U.S. at 670).

But, where there is an alleged discrepancy among official documents in

showing what Act Congress did pass, and the issue is determining whether a bill

has actually passed both houses of Congress, *Marshall Field* decided which of those

authorities would take precedence, and that authority is the enrolled bill.  Even

with respect to the journals, it is not the case that they are "the <u>highest</u> evidence of

the facts stated in them . . . much less that the authentication of an enrolled bill, by
the official signatures of the presiding officers of the two houses and of the
president, as an act which has passed congress, may be overcome by what the
journal of either house shows or fails to show." 143 U.S. at 679-80 (emphasis
supplied). The same result follows *a fortiori* with respect to other documents
printed by command of a Congress rather than (as the journals are) by command of
the Constitution:

> [I]t is not competent . . . to show, from the journals of either house,
> from the reports of committees, or from other documents printed by
> authority of congress, that the enrolled bill, . . . as finally passed,
> contained a section that does not appear in the enrolled act in the
> custody of the state department.

143 U.S. at 680.[8]

That statement is not dictum, as plaintiff contends (Pl's SJ Mem. at 12-13,
19). Marshall Field alleged, as plaintiff does here, that examining documents
printed by authority of Congress would show that an enrolled bill did not in fact
pass both houses of Congress in violation of the Bicameralism clause. *Marshall
Field*'s rejection of that claim by deciding that the proffered evidence could not be
considered was holding, not dictum. This is highlighted by the contrast with *United
States v. Ballin*, 144 U.S. 1 (1892), decided, as plaintiff notes in relying on the case

---

[8] Congress may have authority to pass a law "declaring by what kind of
evidence an enrolled act of congress . . . may be shown not to be in the form in which
it was when passed by congress . . . ." *Harwood v. Wentworth*, 162 U.S. 890, 894
(1896) (dictum). The statutes cited by Public Citizen, which provide for publication
of various materials (*i.e.*, 1 U.S.C. §§ 106, 109, 113; 44 U.S.C. § 706), do not purport
to exercise that authority.

(Pl's SJ Mem. at 20), on the same day as *Marshall Field*. In *Ballin*, the Court "assum[ed] . . . without deciding," 144 U.S. at 4, that the journals could be examined for a different purpose (the presence of a quorum) and then found that an examination of the journals did not in fact support the claimed lack of a quorum. Had *Marshall Field* similarly examined the evidence tendered by Marshall Field and found, <u>after that examination</u>, that the claimed discrepancy was not proven, whatever it also said about the categorical incompetence of such evidence might have become an alternative holding, if not outright dictum. But, in contrast to *Ballin*, the *Marshall Field* Court rested its decision squarely on the incompetence, rather than inconclusiveness or ambiguity, of the evidence Marshall Field attempted to present.

Plaintiff also attempts to distinguish *Marshall Field* by arguing that the possibility of "mischief" or "deliberate abuse" is present here (Pl's SJ Mem. at 22-23) although, then again, maybe there was nothing more than an "innocent mistake" and a "good faith attempt" to correct an alleged "error," *id.* at 23. But the Supreme Court recognized, not only in *Marshall Field*, but also in *Harwood v. Wentworth*, 162 U.S. 547 (1896), the objection that "evils . . . may result" from the enrolled bill rule by "mak[ing] it possible for [legislative] officers to impose upon the people, as a law, something that never in fact received legislative sanction," 162 U.S. at 893, and it nevertheless held in *Marshall Field* and reaffirmed in *Harwood* that an attested enrolled bill is conclusive evidence that a bill passed both houses.

Finally, Public Citizen contends that *Marshall Field* is "is subject to exceptions." Pl's SJ Mem. at 19. But of the four cases cited as exceptions, one (*Gardner v. Collector*, 73 U.S. 499, 511 (1867)) was distinguished by *Marshall Field* itself, *see* 143 U.S. at 678-79, and two (as plaintiff acknowledges) merely assumed without deciding that the journals could be consulted.[9] The final, and principal, case plaintiff relies on for this point was not an "exception" to *Marshall Field*, but a situation beyond the scope of its rule. *United States v. Munoz-Flores*, 495 U.S. 385 (1990). As *Munoz-Flores* explained, what *Marshall Field* decided was the "'nature of evidence' the Court would consider in determining whether a bill has actually passed Congress," 495 U.S. at 391 n.4 (*quoting Marshall Field*, 143 U.S. at 670), which is the issue here just as it was in *Marshall Field*. The different question presented in *Munoz-Flores*, whether an Act, once so determined to have passed both houses of Congress, is constitutional, may, of course, be answered by reference to materials other than those that conclusively determine that the Act passed both houses of Congress. *Id.* "The enrolled bill doctrine is intended to forestall judicial inquiry into procedural irregularities occurring prior to the enactment of bills, not inherent defects in bills as enrolled." *Cherry v. Steiner*, 716 F.2d 687, 693 (9th Cir. 1983); *see Marshall Field*, 143 U.S. at 672.

That *Munoz-Flores* represents no retreat from *Marshall Field* is evident from *Twin City National Bank v. Nebeker*, 167 U.S. 196 (1897), which presented the

---

[9] *Flint v. Stone Tracy & Co.*, 220 U.S. 107, 143 (1911); *United States v. Ballin*, 144 U.S. 1 (1892), cited Pl's SJ Mem. at 20.

same issue as *Munoz-Flores*, whether an Act violated the Origination clause.

Although the *Twin City* Court was aware of the opinion only five years previously in

*Marshall Field* (Justice Harlan wrote both opinions and *Twin City* begins "[i]n *Field*

*v. Clark*"), it regarded and left as an open question whether *Marshall Field* should

be extended to questions beyond determining what it is Congress has passed, and it

decided the Origination Clause issue on the merits, just as *Munoz-Flores* would

nearly a century later.

C.    *Marshall Field* Is Sound Constitutional Law

Even if *Marshall Field* were not controlling on this Court, the decision is

sound both as a matter of constitutional theory and of eminent practical sense.

As the Court explained:

> [T]he signing by the Speaker of the House of Representatives,
> and by the President of the Senate, in open session, of an enrolled bill,
> is an official attestation by the two houses of such bill as one that has
> passed Congress.  It is a declaration by the two houses, through their
> presiding officers, to the President, that a bill, thus attested, has
> received, in due form, the sanction of the legislative branch of the
> government, and that it is delivered to him in obedience to the
> constitutional requirement that all bills which pass Congress shall be
> presented to him.  And when a bill, thus attested, receives his
> approval, and is deposited in the public archives, its authentication as
> a bill that has passed Congress should be deemed complete and
> unimpeachable. . . . The respect due to coequal and independent
> departments requires the judicial department to act upon that
> assurance, and to accept, as having passed Congress, all bills
> authenticated in the manner stated; leaving the courts to determine,
> when the question properly arises, whether the act so authenticated, is
> in conformity with the constitution.

*Marshall Field*, 143 U.S. at 672.  That "respect due to coequal and independent

departments" is as important today as it was in 1892.

-11-

Moreover, the enrolled bill rule of *Marshall Field* also serves vital reliance interests that enable citizens to know what the law is, that the law can be found in one source, not in a disputatious hunt through underlying materials that may or may not yield a clear or definitive answer.[10]  *See* 143 U.S. at 673-77; *accord*, John Henry Wigmore, 4 EVIDENCE IN TRIALS AT COMMON LAW § 1350 at 832 (J. H. Chadbourn rev. 1972) (contrary view risks "plung[ing] the community into the uncertainty of repeated litigation on a question never capable of final settlement").

---

[10] Since the Act in question here is a "Deficit Reduction Act," perhaps the principal reliance interest at stake is the government's own interest in the public fisc, a not inconsiderable or unimportant interest given the immensity of the public debt.  But even if that public interest were put wholly to one side, there are other reliance interests created by the Act that are at stake.  For example,

– Holders of certain retirement accounts have an interest in knowing whether, as the Deficit Reduction Act provides (section 2103(c)), their accounts are insured with the Federal Deposit Insurance Corporation for more than $100,000.

– Broadcasters and households seeking to invest in digital broadcast or reception equipment have an interest in knowing whether they can rely on Title III of the Deficit Reduction Act, the Digital Television Transition and Public Safety Act.

– Public officials need to know whether they are or are not authorized to implement the unified national alert and tsunami warning program established by section 3010 of the Act.

– Doctors treating Medicare patients need to know whether they can rely on the expansion of Medicare coverage to cover ultrasound screening for abdominal aortic aneurysms (section 5112) and additional colorectal cancer screenings (section 5113).

– States may rely on the additional assistance to States affected by hurricane Katrina in section 6201.

By contrast, under plaintiff's view, once the enrolled bill rule is overthrown it becomes open season for litigants to overturn any law by fly-specking for misplaced commas or other variations in successive versions of bills that plaintiff says must be "*identical*," Pl's SJ Mem. at 6 (emphasis plaintiff's) and contain "'precisely the same text'" in both houses, *id* at 7, *quoting Clinton v. City of New York*, 524 U.S. 417, 448 (1998).

*Marshall Field* sensibly recognizes that the public should be able to rely on and be able to resort to a <u>single</u> document setting forth <u>the</u> law rather than be compelled – or allowed in the case of those seeking to avoid a statute – to make a character-by-character comparison of two or more documents to know whether there is any law at all. The chances of divergence of multiple texts that could fuel the uncertainty *Marshall Field* sought to avoid can be substantial. For example, in *United States v. Thomas*, 788 F.2d 1250, 1253-54 (7th Cir.), *cert. denied*, 479 U.S. 853 (1986), Judge Easterbrook noted that, of the thirty-eight States that ratified the Sixteenth Amendment, only four managed in their instruments of ratification to set out the language of the amendment exactly as Congress approved it, with the other instruments containing a wide variety of errors of diction, capitalization, spelling, or punctuation. 788 F.2d at 1253. And the Sixteenth Amendment is only thirty words long. The possibility that similar variances may occur and recur in enacting statutes cannot be regarded as trivial, as most statutes are much longer than thirty words, are subject to more amendments than an up-or-down vote on a constitutional provision, and are likely to receive attention less extraordinarily painstaking than

what one would expect to be lavished on a proposed amendment to the federal constitution.

Obviously, precisely because of the unequivocal holding of *Marshall Field*, there are few federal cases illustrating the problems *Marshall Field* avoids. But the large body of state law offers cautionary lessons. State constitutions typically contain much more detailed procedural requirements that the legislature must follow in enacting statutes than does the federal constitution. *See* Robert F. Williams, *State Constitutional Law Processes*, 24 WM. & MARY L. REV. 169, 202 (1983). The year *Marshall Field* was decided, one commentator observed that "[o]ne of the most marked features of all recent State constitutions is the distrust shown of the legislature." Amasa M. Eaton, *Recent State Constitutions*, 6 HARV. L. REV. 53, 109 (1892). In light of the more detailed strictures on legislative processes in state constitutions, not all States, even at the time of *Marshall Field*, had adopted the enrolled bill rule in construing their own constitutions, *Marshall Field,* 143 U.S. at 677-78, and several additional States departed from the enrolled bill rule in the last century. It is thus especially noteworthy that in recent years a number of state courts construing their own constitutions have adhered to the enrolled bill rule even though they are not bound by *Marshall Field* to do so. *E.g.*, *Washington State Grange v. Locke*, 153 Wash. 2d 475, 499-501, 105 P.3d 9, 22-23 (2005); *Birmingham-Jefferson Civic Center Auth. v. City of Birmingham*, 912 So. 2d 204, 219-21 (Ala. 2005); *Medical Soc'y of South Carolina v. Medical Univ. of South Carolina*, 334 S.C. 270, 278, 513 S.E.2d 352, 356-57 (1999); *see also Collins v. State*,

-14-

750 A.2d 1257, 1262 (Me. 2000) (Calkins, J, concurring); *De Asis v. Dep't of Motor Vehicles*, 112 Cal. App. 4th 593, 599-600, 5 Cal. Rptr. 3d 231, 236-37 (2003). When *Marshall Field* was decided, the State "particularly" noted as having a contrary rule was Illinois. 143 U.S. at 678. That State, after more than a century's experience attempting to cope with the disruption and uncertainty produced by not following the enrolled bill rule, decided in 1970 to amend its constitution by adopting the enrolled bill rule. *People v. Dunigan*, 165 Ill. 2d 235, 252-53, 209 Ill. Dec. 53, 61-62, 650 N.E.2d 1026, 1034-35 (1995).

    We do not mean to suggest that Congress may enact into law a bill that does not pass both houses. *Marshall Field*, 143 U.S. at 669-70. But the task of comparing and (if necessary) reconciling the bills passed by each house is to be done by Congress itself in the very process of enrolling the bill <u>before</u> presenting it to the President for signature and to the country as law. The President, the Judiciary, the defendant Clerk of Court, and the public are all entitled to rely on the attestation represented by an enrolled bill that it has been duly enacted by <u>both</u> houses.

    II.    Even If The Rule Of *Marshall Field* Were To
           Be Disregarded, Plaintiff Has Not Shown That
           <u>The Two Houses Did Not Pass The Same Act</u>

    Even if the enrolled bill rule of *Marshall Field* were to be disregarded, the evidence plaintiff attempts to present would not demonstrate that the Deficit Reduction Act did not pass both houses of Congress.

    First, plaintiff admits that the Senate enacted the Deficit Reduction Act as it was ultimately enrolled. Complaint ¶ 15. Second, resort to the *Congressional*

*Record* – which becomes fair game if we indulge plaintiff's argument that such resort is not precluded by *Marshall Field* – shows that after the Senate so acted, the House voted to "concur in the Senate amendment to the House amendment," H. Res. 652, 152 Cong. Rec. H37 (February 1, 2006), *agreed to*, 151 Cong. Rec. H68 (February 1, 2006). Thus, both houses did pass the same bill, and that bill was presented to the President.

But plaintiff says that the "Senate amendment" the House concurred in was not the Senate amendment. Complaint ¶ 13. Plaintiff argues that the House concurred instead in an engrossed Senate bill that was not the actual Senate amendment, an engrossed Senate bill, plaintiff argues, that "is not" merely "*evidence*" of House action, but "*is* the text of the bill that passed the House." Pl's SJ Mem. at 18 (emphasis plaintiff's).

This is a strikingly opportunistic double standard. We have just explained why, in the world of *Marshall Field*, the enrolled bill is conclusive evidence of what passed both houses. In that (actual) world it is consistent for the House (*e.g.*), for its own internal purposes, to look to an engrossed bill sent to it by the Senate as the similarly conclusive measure of what the Senate passed. But if plaintiff's challenge to *Marshall Field* is accepted, and the enrolled bill no longer is what passed the Congress, but merely rebuttable evidence, on what basis does plaintiff pick and choose the engrossed bill to have the same kind of conclusiveness it would deny to the enrolled bill? If, in other words, it is appropriate and necessary for those presented with the enrolled bill (*e.g.*, the President and the Judiciary) to look

-16-

behind the enrolled bill to see what (supposedly) Congress "really" passed, then by

parity of reasoning, the House, when presented with a Senate engrossed bill, may

and must look behind it to see what the Senate "really" passed.  And, in this case,

why is it that the House, when deciding whether to "concur in the Senate amend-

ment," would not reach the same conclusion as plaintiff, *i.e.*, that the bill actually

passed by the Senate is the bill ultimately presented to the President?  In any new

legal world in which one looks behind enrolled and engrossed bills, that was the

"Senate amendment" the House voted to "concur" in.[11]

III.    Subsection 5101(a) Of The Deficit Reduction Act Is Severable
        From Section 10001 And The Other Provisions Of The Act

The only part of the Deficit Reduction Act that Public Citizen challenges, or

claims to have sustained injury in fact to challenge, is section 10001, which

increases the fee for filing civil actions.  Complaint ¶¶ 17-20.  The only discrepancy

between the House and Senate versions of the bills that Public Citizen alleges,

Complaint ¶ 12, relates to an entirely different provision, subsection 5101(a), which

concerns Medicare beneficiary ownership of certain durable medical equipment.

Even if *Marshall Field* were to be overruled or ignored and plaintiff per-

mitted to present evidence that the Act was passed in violation of the Bicameralism

---

[11] To be sure, even under the new legal regime of plaintiff's argument, the House could protect itself if it wanted to rely on an engrossed Senate bill by specifying that it was concurring in a bill text set forth in a Senate engrossed bill rather than in any different text actually adopted by the Senate.  Indeed, in this instance, the House did set forth a view that the engrossed bill embodied the Senate amendment, but it did not do so until just after it had already accepted the Senate amendment without qualification.  151 CONG. REC. H69 (Feb. 1, 2006).

clause, the only provision affected by that alleged violation is subsection 5101(a).
That provision is severable from section 10001 and the remaining provisions of the
Act.

Courts must "'refrain from invalidating more of the statute than is
necessary.'" *United States v. Booker*, 543 U.S. 220, 258 (2005), *quoting Regan v.
Time, Inc.*, 468 U.S. 641, 652 (1984); *accord, e.g.*, *Alaska Airlines v. Brock*, 480 U.S.
678, 684 (1987).  Thus, even when a portion of an Act is found to be unconstitu-
tional, the courts should and must allow to stand those portions of the Act that are
themselves (1) constitutionally valid, (2) capable of  functioning independently, and
(3) consistent with Congress' basic objectives in enacting the statute.  *Booker*, 543
U.S. at 258-59.  "'Unless it is evident that the Legislature would not have enacted
those provisions which are within its power, independently of that which is not, the
invalid part may be dropped if what is left is fully operative as a law.'"[12]

Under those standards, section 10001 of the Act is plainly valid and severable
from subsection 5101(a), even if the alleged discrepancy in passing the latter
provision did violate the Bicameralism clause.  It is constitutionally valid for
Congress to regulate the fees charged for filing a civil action, a provision on fees for
filing civil actions is manifestly capable of functioning independently of the rules on
Medicare beneficiary ownership of durable medical equipment, and an increase in

---

[12] *Alaska Airlines v. Brock*, 480 U.S. 678, 684 (1987), *quoting Buckley v.
Valeo*, 424 U.S. 1, 108 (1976) (per curiam), *quoting Champlin Refining Co. v. Corp.
Comm'n*, 286 U.S. 210, 234 (1932).

fees is consistent with the basic statutory objective of reducing the federal deficit.
Indeed, not only is it <u>not</u> "evident" Congress would have refrained from enacting
section 10001 if it had known that subsection 5101(a) was invalid, but any
invalidity of the latter subsection would have made it all the <u>more</u> urgent that at
least the other deficit-reducing provisions of the Act, such as section 10001, would
remain in place.

Public Citizen may object that severability standards developed in cases
where one section violates a substantive command of the Constitution, such as the
First Amendment, Sixth Amendment, or Commerce Clause,[13] do not apply where
the procedural requirement of the Bicameralism clause is violated, since, plaintiff
might argue, a failure of the texts passing each house to match in <u>any single</u>
particular means that <u>no</u> part of the bill has ever become a law at all.  And there
are some state cases that do seem to apply that kind of formalistic extremism to
severability issues arising under state constitutions.[14]

But that formalistic extremism is inconsistent with the general approach of
the federal courts to severability.  Obviously, a federal case on all fours with this
one could not have arisen subsequent to *Marshall Field*.  However, in the last case

---

[13] These were the  constitutional provisions involved in, respectively, *Buckley
v. Valeo*, 424 U.S. 1, 108 (1976)*, United States v. Booker*, 543 U.S. 220 (2005), and
*Champlin Refining Co. v. Corp. Comm'n* , 286 U.S. 210, 234 (1932).

[14] *E.g., Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 864 P.2d 1161
(1993); *Ass'n of Texas Professional Educators v. Kirby*, 788 S.W.2d 827, 830-31
(Texas 1990) (alternative holding); *State ex. rel Foster v. Naftalin*, 246 Minn. 181,
74 N.W.2d 249 (1956) (over a strong dissent*).

before *Marshall Field*, the proceedings below in *Marshall Field* itself, the clothing

tariff provision Marshall Field challenged was upheld because it was severable from

the tobacco tax rebate provision that gave rise to the alleged bicameralism viola-

tion.[15]  And in *Alaska Airlines v. Brock*, 480 U.S. 678 (1987), the Supreme Court

unanimously held that a one-house veto provision – *i.e.*, a bicameralism violation of

the kind involved in *Immigration and Naturalization Service v. Chadha*, 462 U.S.

919 (1983), on which plaintiff relies on the merits (Pl's SJ Mem. at 6, 11) – <u>was</u>

severable from the remainder of the Act.  *See also Chadha*, 462 U.S. at 931-35

(same, but not unanimous).

After all, <u>whenever</u> the courts hold that an unconstitutional provision may be

severed from the remainder of a statute on <u>any</u> ground, the remainder of the statute

is <u>by definition</u> not a statute that passed both houses of the legislature.  The federal

courts nevertheless will routinely sever an unconstitutional section from a statute

and enforce the remaining sections even though neither house of Congress – let

alone both – ever passed a statute containing the remaining constitutional sections

---

[15] The circuit courts affirmed the decision of the Board of General Appraisers
for the reasons given in the Board's opinion.  *In re Sternbach*, 45 F. 175
(C.C.S.D.N.Y. 1891), *aff'd on other grounds sub nom. Marshall Field & Co. v. Clark*,
143 U.S. 649 (1892); *see* Transcript of Record at 31, *Marshall Field & Co. v. Clark*,
No. 1,052 (U.S. Oct. Term 1891) (opinion of Circuit Court for the Northern District
of Illinois).  The Board's opinion was squarely grounded on the severability of the
remaining provisions of the tariff from the tobacco tax rebate provision.  Transcript
of Record at 11, 13-15, *Marshall Field & Co. v. Clark*, No. 1,052 (U.S. Oct. Term
1891).  (The name of the Board of General Appraisers was later changed to the
Customs Court, *see Ex Parte Bakelite Corp.*, 279 U.S. 438, 457 (1929).)

and those sections only.  If the Bicameralism clause does not forbid severability in

those instances, it likewise does not forbid it here:

> "[There is] no reason why this doctrine [of severability] should not
> apply to all statutes alike, whatever may be the grounds of the
> invalidity of their bad parts.  Whatever is void is not law, say the
> courts.  They further say that what is void in a law may be stricken
> from it, and that it is their duty if what remains can be enforced
> independent of the part stricken, to uphold that much; but they
> nowhere say, and it would be inconsistency to say, that being void for
> one reason this is unauthorized, while if void for another a different
> rule may prevail."

*Gwynn v. Hardee*, 92 Fla. 543, 556, 110 So. 343, 347 (1926) (accepting proof that

enrolled act contained provisions not passed by both houses, but holding remainder

of statute valid on severability grounds), *quoting State ex. rel Boyd v. Deal*, 24 Fla.

293, 315, 4 So. 899, 909-10 (1888) (Maxwell, C.J., dissenting); *accord, e.g., Loomis v.

Callahan*, 196 Wis. 518, 220 N.W. 816, 820 (1928) ("It would be a strict, harsh, and

senseless rule that would condemn the entire act because the Senate consented to

the elimination of amendment No. 2S without a yea and nay vote"); *People ex. rel

Brady v. LaSalle St. Trust & Savings Bank*, 110 N.E. 38 (Ill. 1915); *State v. Van

Duyne*, 24 Neb. 586, 39 N.W. 612 (1888); *Berry v. Baltimore & Drum Point R. Co.*,

41 Md. 446 (1875).

There is indeed no good reason why the Court should not apply, in the case of

an alleged Bicameralism violation, the same principles of severability that it applies

with respect to other constitutional provisions.  When those rules are applied, it is

clear that section 10001 – the civil action fee provision – is wholly severable from

subsection 5101(a), the Medicare durable medical equipment provision, the only

provision that provides any basis for an argument that the Act is unconstitutional.

<u>Conclusion</u>

For the reasons stated above, defendant's motion to dismiss should be

granted, and plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

*Brian G. Kennedy*
Sheila M. Lieber
Brian G. Kennedy (D.C. Bar 228726)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7204
Washington, D.C.  20530
Tel.: (202) 514-3357
Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov

Attorney for Defendants

-22-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC CITIZEN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-523 |
| | ) | Judge Bates |
| CLERK, UNITED STATES DISTRICT | ) | |
| COURT FOR THE DISTRICT OF | ) | |
| COLUMBIA, | ) | |
| | ) | |
| Defendant | ) | |

DEFENDANT'S STATEMENT OF GENUINE ISSUES

Pursuant to Local Civil Rule 56, defendant sets forth this statement of genuine issues.  The paragraph numbers below correspond to the paragraph numbering of plaintiff's statement of material facts as to which there is no material dispute.

1. Not disputed.

2. Not disputed.

3. Plaintiff relies on the assertions made in paragraphs 3 through and including 10 of its statement of material facts for the purpose of showing that the Deficit Reduction Act of 2005 did not pass both houses of Congress.  The enrolled bill showing such passage is "complete and unimpeachable" authentication that the bill passed Congress.  *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892).  Accordingly, the allegations set forth in each of paragraphs 3 through and including 10 may not be considered by this Court in determining whether the Deficit

Reduction Act has been enacted into law, and are not competent evidence in this proceeding for that purpose.

4.  Plaintiff relies on the assertions made in paragraphs 3 through and including 10 of its statement of material facts for the purpose of showing that the Deficit Reduction Act of 2005 did not pass both houses of Congress.  The enrolled bill showing such passage is "complete and unimpeachable" authentication that the bill passed Congress.  *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892).  Accordingly, the allegations set forth in each of paragraphs 3 through and including 10 may not be considered by this Court in determining whether the Deficit Reduction Act has been enacted into law, and are not competent evidence in this proceeding for that purpose.

Even if such allegations could be considered, plaintiff's contention that the House voted on a "version" of S. 1392 that contained a 36-month provision would be in genuine dispute.  (Assuming still only <u>arguendo</u> that materials other than the enrolled bill may properly be considered) the House voted to accept the bill as amended by the Senate, H. Res. 652, 152 CONG. REC. H37 (February 1, 2006), *agreed to*, 151 CONG. REC. H68 (February 1, 2006).  (Assuming still only <u>arguendo</u> that materials other than the enrolled bill may properly be considered) the House resolution accepting the Senate amendment does not specify that the Senate amendment is as reflected in the Senate engrossed bill as opposed to as reflected in the actual Senate vote, and the indication by the House that it viewed the Senate amendment to be as set forth in the Senate engrossed bill came only just after the

House had already accepted the Senate amendment without qualification, 151 CONG. REC. H69 (Feb. 1, 2006).

5. Plaintiff relies on the assertions made in paragraphs 3 through and including 10 of its statement of material facts for the purpose of showing that the Deficit Reduction Act of 2005 did not pass both houses of Congress. The enrolled bill showing such passage is "complete and unimpeachable" authentication that the bill passed Congress. *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892). Accordingly, the allegations set forth in each of paragraphs 3 through and including 10 may not be considered by this Court in determining whether the Deficit Reduction Act has been enacted into law, and are not competent evidence in this proceeding for that purpose.

Even if such allegations could be considered, plaintiff's contention that the House passed S. 1392 with a 36-month provision would be in genuine dispute. (Assuming still only <u>arguendo</u> that materials other than the enrolled bill may properly be considered) the House voted to accept the bill as amended by the Senate, H. Res. 652, 152 CONG. REC. H37 (February 1, 2006), *agreed to*, 151 CONG. REC. H68 (February 1, 2006). (Assuming still only <u>arguendo</u> that materials other than the enrolled bill may properly be considered) the House resolution accepting the Senate amendment does not specify that the Senate amendment is as reflected in the Senate engrossed bill as opposed to as reflected in the actual Senate vote, and the indication by the House that it viewed the Senate amendment to be as set forth

in the Senate engrossed bill came only just after the House had already accepted

the Senate amendment without qualification, 151 CONG. REC. H69 (Feb. 1, 2006).

6.  Plaintiff relies on the assertions made in paragraphs 3 through and

including 10 of its statement of material facts for the purpose of showing that the

Deficit Reduction Act of 2005 did not pass both houses of Congress.  The enrolled

bill showing such passage is "complete and unimpeachable" authentication that the

bill passed Congress.  *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892).

Accordingly, the allegations set forth in each of paragraphs 3 through and including

10 may not be considered by this Court in determining whether the Deficit

Reduction Act has been enacted into law, and are not competent evidence in this

proceeding for that purpose.

Even if such allegations could be considered, plaintiff's contention that the

House never passed a  "version" of S. 1392 identical in substance to the version

passed by the Senate on December 21, 2005, would be in genuine dispute.

(Assuming still only arguendo that materials other than the enrolled bill may

properly be considered) the House voted to accept the bill as amended by the

Senate, H. Res. 652, 152 CONG. REC. H37 (February 1, 2006), *agreed to*, 151 CONG.

REC. H68 (February 1, 2006).  (Assuming still only arguendo that materials other

than the enrolled bill may properly be considered) the House resolution accepting

the Senate amendment does not specify that the Senate amendment is as reflected

in the Senate engrossed bill as opposed to as reflected in the actual Senate vote, and

the indication by the House that it viewed the Senate amendment to be as set forth

in the Senate engrossed bill came only just after the House had already accepted
the Senate amendment without qualification, 151 CONG. REC. H69 (Feb. 1, 2006).

7.  Plaintiff relies on the assertions made in paragraphs 3 through and
including 10 of its statement of material facts for the purpose of showing that the
Deficit Reduction Act of 2005 did not pass both houses of Congress.  The enrolled
bill showing such passage is "complete and unimpeachable" authentication that the
bill passed Congress.  *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892).
Accordingly, the allegations set forth in each of paragraphs 3 through and including
10 may not be considered by this Court in determining whether the Deficit
Reduction Act has been enacted into law, and are not competent evidence in this
proceeding for that purpose.

Even if such allegations could be considered, plaintiff's contention that the
House never passed a "version" of S. 1392 identical in substance to the version
signed by the President would be in genuine dispute.  (Assuming still only arguendo
that materials other than the enrolled bill may properly be considered) the House
voted to accept the bill as amended by the Senate, H. Res. 652, 152 CONG. REC. H37
(February 1, 2006), *agreed to*, 151 CONG. REC. H68 (February 1, 2006).  (Assuming
still only arguendo that materials other than the enrolled bill may properly be
considered) the House resolution accepting the Senate amendment does not specify
that the Senate amendment is as reflected in the Senate engrossed bill as opposed
to as reflected in the actual Senate vote, and the indication by the House that it
viewed the Senate amendment to be as set forth in the Senate engrossed bill came

-5-

only just after the House had already accepted the Senate amendment without qualification, 151 CONG. REC. H69 (Feb. 1, 2006). (Assuming still only <u>arguendo</u> that materials other than the enrolled bill may properly be considered) the version of the bill passed by the Senate and concurred in by the House, was the version signed by the President.

8. Plaintiff relies on the assertions made in paragraphs 3 through and including 10 of its statement of material facts for the purpose of showing that the Deficit Reduction Act of 2005 did not pass both houses of Congress. The enrolled bill showing such passage is "complete and unimpeachable" authentication that the bill passed Congress. *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892). Accordingly, the allegations set forth in each of paragraphs 3 through and including 10 may not be considered by this Court in determining whether the Deficit Reduction Act has been enacted into law, and are not competent evidence in this proceeding for that purpose.

9. Plaintiff relies on the assertions made in paragraphs 3 through and including 10 of its statement of material facts for the purpose of showing that the Deficit Reduction Act of 2005 did not pass both houses of Congress. The enrolled bill showing such passage is "complete and unimpeachable" authentication that the bill passed Congress. *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892). Accordingly, the allegations set forth in each of paragraphs 3 through and including 10 may not be considered by this Court in determining whether the Deficit

Reduction Act has been enacted into law, and are not competent evidence in this proceeding for that purpose.

10.  Plaintiff relies on the assertions made in paragraphs 3 through and including 10 of its statement of material facts for the purpose of showing that the Deficit Reduction Act of 2005 did not pass both houses of Congress.  The enrolled bill showing such passage is "complete and unimpeachable" authentication that the bill passed Congress.  *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892).  Accordingly, the allegations set forth in each of paragraphs 3 through and including 10 may not be considered by this Court in determining whether the Deficit Reduction Act has been enacted into law, and are not competent evidence in this proceeding for that purpose.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

_Brian G. Kennedy_
Sheila M. Lieber
Brian G. Kennedy (D.C. Bar 228726)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7204
Washington, D.C.  20530
Tel.: (202) 514-3357
Fax: (202) 616-8470
Email: brian.kennedy@usdoj.gov

Attorney for Defendants