sacramento ruling.txt

1

```
 1              SACRAMENTO, CALIFORNIA
 2       FRIDAY, JUNE 16TH, 2006 - 10:00 A.M.
 3                    ---oOo---
 4       THE CLERK:  Calling Civil Case 99-355, State of
 5  California v. Donna Shalala, on far various motions, Your
 6  Honor.
 7       THE COURT:  Counsel, please come forward and make
 8  your appearances.
 9       MR. BECKWITH:  Good morning, Your Honor.  David
10  Beckwith appearing on behalf of the Intervenor and the
11  Movants in this matter.
12       MS. SHELVY:  Good morning, Your Honor.  Marjorie
13  Shelvy on behalf of the Movants and Petitioner Intervenor.
14       MS. BROWN:  Good morning, Your Honor.  Catherine
15  Brown for Plaintiff, Department of Social Services.
16       MR. SIMPSON:  Good morning, Your Honor.  Scott
17  Simpson for the Federal Secretary of Health and Human
18  Services.
19       THE COURT:  All right.  We have two matters to take
20  up, a motion for relief from judgment, and a motion to
21  enforce the judgment.
22       I'm going to take up the motion for relief from
23  judgment at this time.  And let me just advise the parties
24  that I've read your briefs, and I think the matters have been
25  briefed fairly thoroughly.  There are some cases that the
```

sacramento ruling.txt

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

2

1    Court found that were not brought to the Court's attention,

2    but they don't affect in a material way, I don't think, the

3    outcome of -- at least of my ruling on the motions, nor do

4    they alter your positions dramatically, except they support

5    some and don't support others.

6         But let just me say with respect to the motion for

7    relief from judgment, the DRA is constitutional.  That issue

8    at this point, I don't think we need to have a lot of

9    discussion about it.  I think there's -- the doctrine clearly

10   applies in this case.  I think in light of the fact that

11   there has been now a determinative rule issued by the

12   Secretary, I think the issue is ripe.

13        So what we have here is the issue of the application

14   of relief from the judicial order from the February 8th date,

15   the date that Congress enacted the DRA.

16        And let me just say I think I know your positions,

17   but if you have something to add with respect to that

18   particular issue, retroactivity, the appropriate date, I'd be

19   happy to hear something other than what you already submitted

20   to me.

21        Do you have anything new to add to your already

22   submitted arguments?  Either the Plaintiff/Movants, the State

23   or Federal Government?

24        MS. BROWN:  We have nothing in addition to what's in

25   the pleadings, Your Honor.

sacramento ruling.txt

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

3

1          MR. BECKWITH:  Your Honor, the only thing I would add

2    is that the relief sought is under Rule 60.  Rule 60 clearly

3    contemplates prospective amendment of your order only.  And I

4    think that there are sound policy reasons behind that.

5          Obviously, this Court does not want to find itself

6    dealing with parties that are subject to the order of the

7    Court making decisions on their own as to which of the

8    judgments it should follow and which it should not based on

9    its interpretation of the law.  That's your job.

10         You're going to presumably enter a ruling either

11   today or shortly thereafter on how you wish the judgment to

12   be modified.  Rule 60 only permits that prospectively.

13         I believe that the relief that is sought, although it

14   is obstensible characterized as under Rule 60, it clearly

15   seeks retroactive effect back to February.  And we think that

16   would be clearly improper for the reasons -- for the

17   constitutional reasons that are cited, as well as the federal

18   rule itself plainly says "prospective" only.

19         THE COURT:  All right.

20         Any response to that?

21         MR. SIMPSON:  Certainly, Your Honor.  That's

22   actually -- although I think this is in our papers, that's

                         Page 3

sacramento ruling.txt

23    actually the only thing I wanted to just reiterate to the
24    Court, so I'll just respond to what Mr. Beckwith has said.
25         What we are asking for here is, we believe,




CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360




                                                                4
1    prospective relief.  Title IV-E of the Social Security Act is
2    about providing payments, and payments can be made only to
3    eligible individuals.  And the State is required, at least
4    every 12 months, to re-examine each foster care case, each
5    person receiving Title IV-E benefits under the Social
6    Security Act, to review their circumstances to see whether
7    they continue to be eligible.
8         All we're asking the Court to do is to modify the
9    judgment to allow the State and the Secretary to apply the
10   law as it now exists to those redetermination reviews as they
11   come up after February 8th.  To us, to the Federal Defendant,
12   that does not constitute retroactive application.
13        THE COURT:  All right.  Let me just give you an idea
14   what I'm going to do.
15        I'm going to issue an order from the bench because I
16   think time is of the essence here.  I'm going to issue a more
17   extensive opinion later.  But you're going to know exactly
18   what my ruling is going to be.  I'm going to address the
19   issues that were just raised by counsel.

sacramento ruling.txt

20          Is there anything you want to say about this motion
21    for relief from judgment?
22          What about the the motion to enforce judgment?
23          Again, I have reviewed the positions of the parties.
24    I will add that I don't want argument on standing.  I think
25    the Movants and Rosales have standing.


CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                    (916) 446-6360


                                                            5

1           Anything else you wish to add?
2           Does the State wish to make any comment beyond what
3    you've already submitted?
4           MS. BROWN:   No, Your Honor.  We think we've addressed
5    the issues regarding the motion to enforce.
6           THE COURT:   Counsel?
7           MR. BECKWITH:  Yes, Your Honor.
8           The only thing I wanted to make sure was clear from
9    our papers is that the cases that were open and pending at
10   the time that this Court entered its judgment were all
11   decided based upon a different standard in which the
12   applicants would not have known to offer certain evidence
13   into their case because they wouldn't have been able to
14   anticipate how this Court's judgment would be carried out.
15          So, for example, an applicant that was submitting
16   evidence in support of their case in 2003 would not have

sacramento ruling.txt

17  anticipated that this Court would rule in 2004, in the

18  summer, that certain rules would have to be followed.

19        So therefore, that really highlights the importance

20  of having a review and a Notice of Action.

21        THE COURT:  But you had every opportunity to address

22  that issue.

23        I mean, the plaintiff -- there was no -- there was no

24  secret of what the Court's order was.  In terms of the All

25  County Letter, the Court's order, didn't you have an


CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360


                                                          6

1   opportunity to -- at least the Rosales party had an

2   opportunity to make its position known with respect to NOAs,

3   things of that nature.

4         That was never addressed by the Court because it was

5   never broached by any party to the Court.

6         Right?

7         MR. BECKWITH:  Your Honor, I think that is true prior

8   to the entry of the Court's judgment.  And if that -- at that

9   point, I don't think that anyone, at least from the

10  prospective of Miss Rosales, anticipated the course of events

11  that would later transpire could have taken place.

12        In other words, there would be a review -- perhaps a

13  review that was conducted that would never generate a piece

Page 6

sacramento ruling.txt

14    of paper if there was a denial.  That there would be a review

15    of all of these outstanding cases, and the people that were

16    being reviewed would never learn how that review -- the

17    result that review generated unless they were presumably

18    entitled to a benefit.

19         Why that I think is particularly important is this,

20    and I think your judgment clearly in paragraph 6 contemplates

21    that the review that's conducted might result in some people

22    not receiving benefits.

23         If that were the case, if the review were conducted,

24    the applicant were not going to receive benefits, they would

25    then get a notice that would tell them why they didn't get

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

7

1    benefits.

2         They would then have an opportunity to say, "Oh, the

3    Judge's ruling now says I have to have evidence of, you know,

4    that I was eligible within six months -- or excuse me -- was

5    eligible at the time of removal.  I can provide that

6    evidence."

7         THE COURT:  What about the All County Letter itself.

8         Any effort to modify that or address that in the All

9    County Letter?

10         Let me ask this gentleman first?

sacramento ruling.txt

11          MR. BECKWITH:  Your Honor, I was not involved in the

12    drafting of the All County Letter, but I will say that I

13    did -- I don't believe that it was within the contemplation

14    of any of the attorneys, at least representing Miss Rosales,

15    that one had to spell out in the All County Letter that the

16    State was required to follow State regulation.  The State

17    regulations require that a Notice of Action be provided.

18          THE COURT:  Where is the evidence of noncompliance in

19    the first place?

20          MR. BECKWITH:  Your Honor --

21          THE COURT:  Where is the evidence of noncompliance?

22          MR. BECKWITH:  The fact that we have submitted, in

23    the request for judicial notice, the fact that there were at

24    least four outstanding administrative matters that never

25    generated a response from the State.

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

8

1          These individuals had an outstanding case.  They

2    clearly fell within the scope of what you determined to be

3    the parties affected.  In fact, earlier this morning you said

4    they had standing.

5          They had standing because they had an outstanding

6    case, and they never got a notice from -- a Notice of Denial,

7    they never heard anything.

sacramento ruling.txt

8      They don't know the basis for a denial, if it

9   occurred, so they would be in no position to appeal, they

10  would be in no position to cure.

11      And therein lies the real -- the real danger here is

12  that because there was a new standard applied, and they were

13  never told why they didn't satisfy the new standard, they've

14  been deprived of their ability to appeal or to cure through

15  the administrative process.

16      THE COURT:  Can they still deal with this issue

17  through the administrative process?

18      Why can't they do that?

19      Why am I going to handle this matter when they have

20  an opportunity to appeal through the administrative process?

21      MR. BECKWITH:  Well, Your Honor --

22      THE COURT:  Go ahead.

23      MR. BECKWITH:  Sure.  I think that what we're dealing

24  with here are an untold number of basically people that can't

25  afford lawyers.  And the whole purpose of bringing the case


CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360


9

1   before this Court was not only to get a ruling on what the

2   proper standard ought to be, but to have some mechanism

3   through this Court's order to compel the State, on whom the

4   burden ought to fall for compliance, to actually comply.

Page 9

sacramento ruling.txt

5          And if we impose instead the burden on the

6    individuals that are affected to exhaust administrative

7    remedies, only then being able to enforce this Court's

8    judgment, we find ourselves in a situation where there's an

9    ad hoc approach.

10          Somebody that has the foresight to go to Legal Aid

11    and get a lawyer to help them might get a proper review under

12    the Rosales Standard.  There might be 50 others that don't

13    because this Court's judgment is being ignored by the State.

14          The State basically is counting on the fact that

15    there's going to be a vast number of people that aren't going

16    to have either the knowledge or the motivation or the legal

17    counsel to pursue administrative remedies.

18          THE COURT:  Let's hear from the State on that.

19          What about that assertion that counsel just made?

20          MS. BROWN:  The purpose of the judgment was to

21    establish the instructions that were going to go to the

22    counties.  This is the legal standard you're to apply.

23          And like any other legal standard, what happens on a

24    case-by-case basis is the county then goes forward and

25    administers that legal standard and applies it to particular

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

10

1    facts.

sacramento ruling.txt

2          And, as in any other case, if you don't like the way

3    the county has determined your eligibility or whatever other

4    legal standard applies to your application for benefits, you

5    have an administrative remedy available to you.

6          Nothing about the judgment altered that existing

7    process.  All the judgment did was say that this is the

8    standard to be applied across the board.

9          And we gave the instructions.  That's what we were

10   told to do.  That's what we did.  And there's no evidence

11   that that wasn't carried out the same way as any other

12   instruction given by the Department to the counties as

13   expected to be carried out.

14         And in individual cases where an error is made, there

15   are individual remedies available.  And nothing about the

16   judgment altered that basic structure.

17         THE COURT:  Let me hear from Miss Shelvy.  I'm sorry.

18   You were going to say?

19         MS. SHELVY:  Just to go back briefly on the change in

20   the remedy, we argued that the petition had to be eligible in

21   the month of the petition, and your judgment said had to be

22   prior to the petition being filed.  That was a change of

23   standard from what we wanted, what we understood.

24         What the State is saying ignores the fact that there

25   are -- that there are thousands of people who are potentially

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

sacramento ruling.txt

11

1   eligible under Rosales, have no idea they were wrongly denied
2   in the first place because the standard changed after they
3   came into the system, March 3rd, 2003.
4          They have no way of knowing that.  The State has
5   admitted they didn't ask for any response from the counties
6   on what they reviewed and how they reviewed.  And it's in my
7   declaration there, I am still doing innumerable hearings
8   where the county, presumably as the State instructs, is
9   denying people based on the standard pre-Rosales.  So they're
10  still fighting implementation.
11         THE COURT:  Why wasn't this addressed at the time I
12  issued my order?
13         Seems to me that was a matter that could have been
14  easily discussed at the prior hearing and never was.
15         MS. SHELVY:  At the time, Your Honor, we wanted
16  evidence of compliance.  And we wanted, you know, to follow
17  up with the Court, and that wasn't accepted.
18         We didn't know until the time for review had passed
19  that -- and were told in L.A. County by that staff that they
20  were doing the review, had no idea we'd never know how many
21  they reviewed, how they reviewed them --
22         THE COURT:  But here I am, and I have no evidence of
23  anything.  I mean, this is somewhat speculative.  You may be
24  in a good position to speculate.  I'm not.  That's the
25  problem.

sacramento ruling.txt
CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

12

1           MS. SHELVY:  I understand.

2           THE COURT:  There is a lack of evidence here.

3           MS. SHELVY:  The issue is CDSS has no evidence that

4    they ever did the reviews.  And since they didn't send any

5    notice, nobody was ever notified.  So it was all in the back

6    room.  We assumed that they would follow the order as it

7    read.

8           MR. BECKWITH:  Your Honor, I think that counsel for

9    the State really said something that I think hits at the

10   heart of the matter.  She said that if you don't like the

11   result, you then have an administrative remedy to pursue.

12          And I think what we're saying is how would these

13   people ever know the result?

14          If they get a denial, if there is a Notice of Action

15   that says that we've complied with, you know, paragraph 6 of

16   the judgment, we looked at you a second time, here's your

17   denial, then their argument would have some weight.

18          You then have something to go by.  You then have an

19   administrative remedy to pursue.  You know that something has

20   happened to you.

21          This Court gave the State six months to comply.  How

22   would any of these people know within that six months or six

23   months after that if they had had a review?

24          They're shooting in the dark.  They would have no

25   idea that the State reviewed them the first month, the sixth

sacramento ruling.txt

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

13

1    month or ever.

2         They would never receive notice that said:  "Here's

3    why you didn't get benefits.  Here's the result of what the

4    judge told us we had to do."  And because you don't ever have

5    that piece of paper sent out that the State regulation

6    requires, that's the real mischief here.

7         And I think, Your Honor, had we anticipated at the

8    time that the judgment was being discussed that this would be

9    the state of events we'd find ourselves in now, we would have

10   addressed it back then.

11        But one doesn't think at the time that you need to

12   put in the order, you know, "And State please follow all

13   applicable regulations.  Please don't deny due process.

14   Please send notices out what you make your decision."

15        THE COURT:  All right.  So what are you asking the

16   Court to do?

17        MR. BECKWITH:  Your Honor, what we're asking the

18   Court to do is to require the State to actually carry out

19   what the Court ordered it to do in the first place.  Under

20   paragraph 6 of the judgment, they have to do the review and

21   provide the notice of action.

22        The applicants are out there that don't know what

23   happened.

sacramento ruling.txt
24          THE COURT:  Aren't we shooting in the dark here?
25          If nothing has changed, no benefit has changed, there


CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360


                                                              14

1    is no notice of action; isn't that correct?

2          MS. BROWN:  Your Honor, that's correct.

3          THE COURT:  How -- I have no evidence here of

4    anything.  You are saying -- you're saying this may be the

5    case.  I understand your concern, but I don't know if I have

6    any basis upon which to make this ruling.

7          MR. BECKWITH:  Your Honor, the denial -- presumably

8    the denial was under a new standard.  And so this Court's

9    judgment contemplated specifically that the DSS shall pay all

10   benefits which are found to be due as a result of the review.

11   That was paragraph 6.

12         The judgment contemplates there might be some people

13   that get a review that don't get benefits.  But when you give

14   them notice, they then have an administrative remedy to

15   pursue.  They then can cure the problem.

16         If you accept the State's position, what you're

17   saying is that these applicants should have provided

18   information before the judgment even came down from this

19   Court.  In 2003 they should have provided evidence in an

20   administrative hearing anticipating what this Court would

                              Page 15

sacramento ruling.txt

21  rule in the summer of 2004.   The evidence should have been in

22  there to begin with.

23      That's an unfair standard to assume that the people

24  in this position should anticipate what to do and should do

25  it in advance.

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

15

1       Because the standard changed, that's the reason that

2   you ordered the review under paragraph 6.   And that's the

3   reason that there has to be a notice of action.   Because

4   otherwise what you're sanctioning is a rejection of benefits

5   under the old standard is the same as the rejection of

6   benefits under the new standard when, in fact, the applicant

7   may not know that that was the case.

8       THE COURT:   All right.

9       MS. BROWN:   Your Honor, although this is

10  characterized as a motion to compel compliance with the

11  judgment, the fundamental issue here is the judgment does not

12  require the notice.   It talked about doing the reviews in the

13  course of the six month eligibility review.   That was what

14  was instructed to be done.

15      And we told plaintiff/intervenor a year ago that the

16  instructions that were given did not address notice.   A year

17  passes, nothing happens.   They had the opportunity to address

sacramento ruling.txt

18    the notice issue before the judgment was even entered.   They

19    were aware of this issue a year ago.

20         Long after the reviews have been conducted, the time

21    is completed, now they bring in an issue that they wish they

22    had addressed two years ago.   And it's way late in the

23    process and very unfair to the parties, when final judgment

24    has been entered and no order was entered with respect to

25    notice, to characterize this as compelling compliance with


CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360


                                                              16

1    the judgment that is silent on the issue of notice.

2         It might well have been a great idea to include

3    notice at the time, but it wasn't included.   And this isn't

4    actually an issue of trying to modify a judgment and include

5    a term that they wish they had included in 2004.

6         MR. BECKWITH:   Your Honor, I do have a question on

7    the evidentiary issue raised by counsel.

8         I believe the Court does have before it evidence

9    through the request for judicial notice that these cases were

10   open at the time that this Court's judgment was entered.   The

11   Movants cases were open.

12        And I would ask the State what evidence is there that

13   these particular open cases were reviewed?

14        There's no declaration.   There is no notice of

sacramento ruling.txt

15    action.  We attempted to obtain discovery.  We got no

16    discovery.

17        There is no evidence before this Court that in the

18    anecdotal instances that we provided -- and this can be the

19    tip of the iceberg, these are four or five people that we

20    know of, there is evidence that they belong to the class that

21    were to be benefited by paragraph 6 of the judgment -- and

22    there is no evidence from the State that they ever got a

23    review.

24        THE COURT:  Well, there's not any evidence about

25    anything at this point.  I don't know what happened.  But I

17

1    know what my order was.  And my concern is that with a lack

2    of evidence, the supposition that there was -- that the State

3    did not follow its own regulations, you know, I don't know

4    whether it did or didn't, but my concern is there is no

5    evidence that it didn't.  You haven't presented me any

6    evidence of that.

7        MR. BECKWITH:  We've presented evidence that the

8    cases were open.

9        THE COURT:  I understand that.

10        MR. BECKWITH:  And that there was never a notice of

11    action provided to these applicants.  And that they haven't

sacramento ruling.txt

12  received any notice at all from the State.

13          THE COURT:  Julie.

14          (Court confers with law clerk.)

15          THE COURT:  All right.

16          I'm going to take up one more matter and come back to

17  this matter.  We'll take a short break after we take up the

18  final pretrial conference.

19          Pass this for maybe a very brief final pretrial, then

20  follow that with a small short break, then come back to this.

21          MR. BECKWITH:  Thank you, Your Honor.

22          THE COURT:  I want to make a ruling today.  That's

23  the reason I want to be sure of this.

24          (Matter passed to end of calendar.)

25          (Back on the record.)



CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360



                                                        18

1           THE CLERK:  Recalling Civil Case 99-355, California

2   versus Shalala, on for motions.

3           THE COURT:  Where are counsel?

4           MR. BECKWITH:  We're here ready to go.

5           THE COURT:  You have the thing all resolved?

6           MR. BECKWITH:  If only it were that easy.

7           THE COURT:  We can wait.

8           (Brief pause.)

sacramento ruling.txt

9      THE COURT:   All right.   All counsel are present.

10      Counsel, I just wanted to rethink my own thoughts

11 about the issue of the administrative compliance, and I have

12 done so.   So I'm going to issue this order from the bench at

13 this time with respect to both motions.   And I will issue a

14 much more extensive order in the ensuing week or two.

15      As to the Motion for Relief from Judgment, Plaintiff

16 State of California, Department of Social Services, (DSS) and

17 Defendant Michael Leavitt, Secretary of Health and Human

18 Services bring this motion for relief from judgment pursuant

19 to Rule 60(b) of the Rules of Civil Procedure.   DSS and the

20 Secretary contend that Congress' enactment of the Deficit

21 Reduction Act on February 8, 2006, responding to the Ninth

22 Circuit's holdings in Rosales necessitates relief from this

23 Court's orders implementing those holdings.

24      Rule 60(b)(6) provides as follows:

25      "On motion and upon such terms as are just, the court

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

19

1      may relieve a party...from final judgment, order, or

2      proceeding...any reason justifying relief from the

3      operation of the judgment."

4      Supreme Court precedent makes clear that "a

5 continuing decree of injunction directed to events to come is

sacramento ruling.txt

6    subject always to adaptation as events may be shaped."

7    Citing System Federation versus Wright, 364 U.S. 642.

8         The enactment of the DRA presents a subsequent change

9    in the law that requires judicial response and a grant of

10   relief from the Court's previous orders.

11        However, the Federal Rules of Civil Procedure, Rule

12   60(b) in particular, provide that the Court may relieve a

13   party from final judgment "upon such terms as are just."

14        The unique circumstances and procedural posture of

15   this case require that the Court consider the important, and,

16   in some cases, competing interests that are affected by the

17   parties' motions.

18        The law is clear that a party is not relieved from

19   judgment until this Court or another Article III court grants

20   such relief.  Citing Walker versus City of Birmingham, 388

21   U.S. 307.  However, Congress clearly set forth its intent,

22   through the enactment of DRA, that the Ninth Circuit's

23   interpretation of Section 672(a) in Rosales is no longer

24   applicable.

25        The Secretary wants this Congressional intent to be

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

20

1    implemented by the states.  DSS wants to ensure that it is

2    complying with federal law in order to receive reimbursement

sacramento ruling.txt

3    at the federal participation rate.  Rosales and Movants seek

4    to enforce the judgment for so long as it is the applicable

5    law.

6         After review of the record and the materials

7    submitted by the parties, and after consideration of the

8    interests involved in and affected by this litigation, the

9    Court finds that relief from judgment on "just terms"

10   requires that relief be granted from June 9, 2006, when the

11   formal information memo was issued by Health and Human

12   Services instructing state agencies how the language of the

13   DRA was to be implemented.  Principles of judicial comity

14   require that the Court's order be respected and complied with

15   until lifted.

16        Parties cannot choose when they will or will not

17   comply with this Court's order.  To the extent that DSS and

18   the Secretary desired to be relieved from judgment sooner,

19   they could have filed their motion much sooner and certainly

20   moved for an expedited briefing schedule.

21        This was not done.  However, DSS did file its motion

22   for relief on April 13th, 2006, two months after enactment,

23   and then stipulated to a hearing date on June 2nd, 2006, two

24   months thereafter.

25        The Secretary filed its motion for relief -- his

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

sacramento ruling.txt

1   motion for relief more than three months after enactment on

2   May 16, 2006, noticing the motion for hearing today.

3        Further, pursuant to the relevant statutory regime,

4   the State and DSS need guidance and approval of the Secretary

5   regarding the State Plan.  The Court will not issue an order

6   that requires the State and DSS to self-interpret

7   legislation, in this case the DRA, without guidance from the

8   Secretary.

9        The Secretary argues that the language of DRA should

10  have made it clear to DSS what DSS was supposed to do.  The

11  Court disagrees.  The DRA was clear that the statutory

12  language had changed.  However, the DRA did not instruct

13  State agencies, such as DSS, on how to interpret or

14  incorporate the change in language into their plans which

15  would need to be approved then by the Secretary.

16       Based upon the evidence submitted to the Court, this

17  information was not formally relayed to DSS until June 9,

18  2006, with the issuance of the information memorandum.  This

19  memorandum set forth a "phase-in" policy, whereby foster care

20  maintenance payments were to continue through the month of

21  the child's next annual redetermination of eligibility.

22       However, DSS had no knowledge of this "phase-in"

23  policy and cannot be expected to anticipate the Secretary's

24  implementation of the policy before HHS issued the

25  information memorandum.

sacramento ruling.txt

22

1         As of June 9, 2006, with the issuance of the HHS

2    guidance, it was clear to DSS and to the Rosales eligible

3    applicants that the Secretary's policy pursuant to enactment

4    of the DRA was no longer -- would no longer reimburse

5    payments made to ineligible Rosales applicants.   Therefore,

6    the Court grants DSS' and the Secretary's motion for relief

7    from judgment effective June 9, 2006.

8         As to the Motion to Enforce Judgment, Intervenor

9    Plaintiff, Enedina Rosales, has filed a motion to enforce the

10   Court's order pursuant to Rule 71 of the Federal Rules of

11   Civil Procedure.   Various individuals who alleged to be

12   members of the class protected by this Court's August 17,

13   2004 order have also moved to enforce the Court's judgment.

14        Because movants have demonstrated that they had

15   foster cases open on or after March 3, 2003, they have

16   standing to enforce the court ordered review pursuant to

17   Rule 71.

18        Rosales and Movants argue that DSS should have issued

19   Notice of Action Letters to applicants who were denied

20   benefits after the court ordered review.   The Court's August

21   17th, 2004 order directed DSS to issue an All County Letter

22   instructing the counties to review files open on or after

23   March 3, 2003, and pay benefits to Rosales-eligible

24   plaintiffs.

25        The Court did not direct DSS to issue NOAs.   The

sacramento ruling.txt

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360


23

1   order did not direct DSS to re-evaluate its policies and the

2   interpretation of MR 22-071 regarding the issuance of NOAs.

3   It simply did not address a comprehensive administrative

4   compliance system, and I think there was an opportunity that

5   was afforded counsel to seek that type of re-address if, in

6   fact, it wished to.  And the Court would have entertained

7   that, but such was not -- but such did not happen.

8   Therefore, these issues are not properly before the Court.

9        To the extent that Rosales and Movants argue that an

10  absence of NOAs is evidence of a failure to review open

11  cases, they misapprehend the Court's order.  Such issues are

12  not properly before the Court.

13       Rosales and Movants also argue that the denials of

14  the five cases of Rosales and Movants demonstrates

15  noncompliance with the court ordered review.  This Court has

16  reviewed the submissions of Rosales and the Movants and finds

17  that in three of these cases the parties are not Rosales

18  eligible applicants.  In the remaining two, the evidence

19  submitted is insufficient to determine whether the parties

20  are, indeed, eligible for AFDC-FC benefits.

21       As such, the denial of benefits to these applicants

22  does not demonstrate a failure of DSS to comply with the

23  court ordered review.

24       Further, to the extent that Rosales and Movants take

25  issue with the denial of benefits, there are administrative

sacramento ruling.txt

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

24

1    remedies, the Court believes, to adequately address these

2    claims.

3         Therefore, because neither Movants nor Rosales have

4    provided any evidence that DSS has not complied with the

5    Court's order prior to March 30, 2006, the motions to enforce

6    judgment are denied in part.  However, because evidence has

7    been presented that DSS instructed counties to effectively

8    disregard this Court's order through its March 30, 2006

9    letter, the motions are granted in part.

10        Therefore, the Court makes the following orders:

11    1.   DSS shall make AFDC-FC payments through June 9,

12         2006, for those cases in which the child was

13         entitled to AFDC-FC payments under the CDSS

14         Rosales order or opinion and was otherwise

15         eligible for such benefits and those payments

16         were not paid.

17    2.   The Secretary shall reimburse DSS and the State

18         of California, at the federal participation rate,

19         for all AFDC-FC benefits paid by DSS pursuant to

20         the approval under Title IV-E AFDC-FC State Plan

21         Amendment and this Court's order which remained

22         effective until June 9, 2006.

sacramento ruling.txt

23          That is the Court's order.

24          There will be -- obviously, the Clerk will have the

25     order itself and the orders will be available to you if you

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

25

1     didn't get that all down.  And that can be e-mailed to you.

2     This order is effective as of this date.  I will issue a more

3     extended discussion of my rulings in a written opinion.

4          Anything further?

5          MR. SIMPSON:  Your Honor, if I could just ask for one

6     clarification.  Maybe I didn't catch well enough the first

7     part of the Court's order when the Court was saying 1 and 2

8     and so forth.

9          THE COURT:  Want me to go over it again?

10          MR. SIMPSON:  No.  My question, Your Honor, is does

11     this permit the Secretary's current plan to provide benefits

12     until the next annual review?

13          THE COURT:  Yes.  Your interpretive rule stands in

14     place.

15          MR. SIMPSON:  Okay.

16          This is probably a fait accompli at this point, but

17     if I could just propose to the Court the possibility of

18     making the date May 16th instead of June 9th.

19          The reason I say that, Your Honor, is that is the

sacramento ruling.txt

20    date we filed our motion for relief from judgment, and we

21    included with that a declaration from HHS saying that this is

22    how we were going to implement the change in the law.

23        THE COURT:  Until you adopt that interpretive rule,

24    how are we to know?  Are you required to do so?

25        MR. SIMPSON:  I'm sorry.

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

26

1        THE COURT:  I mean, your intentions are one thing,

2    but the actual instruction was issued on the 9th, correct?

3        MR. SIMPSON:  That is correct, Your Honor.

4        THE COURT:  That's my order.

5        MR. SIMPSON:  Thank you.

6        THE COURT:  Anything further?

7        MR. BECKWITH:  Nothing, Your Honor.

8        THE COURT:  You're welcome.

9        Thank you, counsel.

10        (Off the record at 10:58 AM)

11                        ---oOo---

12

13

14

15

16

sacramento ruling.txt

17

18

19

20

21

22

23

24

25

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

1                    IN THE UNITED STATES DISTRICT COURT

2                FOR THE EASTERN DISTRICT OF CALIFORNIA

3                            ---oOo---

4          BEFORE THE HONORABLE FRANK C. DAMRELL, JR. JUDGE

5

6     STATE OF CALIFORNIA
      DEPARTMENT OF SOCIAL SERVICES
7     and ENEDINA ROSALES,

8            Plaintiffs,

9     Vs.                              CASE NO. CIV. S-99-355 FCD

10    MIKE LEAVITT, SECRETARY OF
      HEALTH AND HUMAN SERVICES,
11

12           Defendant.

13    _____/

14

15

16

17                            ---oOo---

sacramento ruling.txt

18

19                  REPORTER'S TRANSCRIPT

20                FRIDAY, JUNE 16TH, 2006

21          RE: HEARING AND RULING ON MOTIONS

22

23                      ---oOo---

24

25   Reported by:                CATHERINE E.F. BODENE,
                                  CSR. No. 6926




          CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                          (916) 446-6360

     1                        APPEARANCES

     2                        ---oOo---

     3

     4   For the Intervenor:

     5          MCDERMOTT WILL & EMERY LLP
                4370 La Jolla Village Drive, Suite 700
     6          San Diego, California  92122

     7          BY:  DAVID M. BECKWITH,
                     Attorney At Law
     8

     9          LEGAL AID FOUNDATION OF LOS ANGELES
                5228 E. Whittier Boulevard
    10          Los Angeles, California  90022

    11          BY:  MARJORIE SHELVY,
                     Attorney At Law
    12

    13

    14   For the Plaintiff:

    15          ATTORNEY GENERAL OF THE STATE OF CALIFORNIA
                1300 I Street, Suite 125
    16          Sacramento, California  94244

    17          BY:  CATHERINE BROWN,
                     Deputy Attorney General
    18

sacramento ruling.txt

19

20   For the Defendant:

21              UNITED STATES DEPARTMENT OF JUSTICE
                Post Office Box 883, room 7210
22              Washington, DC  20044

23              BY:  W. SCOTT SIMPSON,
                     Assistant U.S. Attorney

24

25                          ---oOo---




            CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                          (916) 446-6360

      1                   REPORTER'S CERTIFICATE

      2                          ---oOo---

      3
          STATE OF CALIFORNIA  )
      4   COUNTY OF SACRAMENTO )

      5

      6
                  I certify that the foregoing is a correct transcript
      7
          from the record of proceedings in the above-entitled matter.
      8

      9

     10              IN WITNESS WHEREOF, I subscribe this
          certificate at Sacramento, California on this 22ND day of
     11   JUNE, 2006.

     12

     13

     14                          _____

     15                          CATHERINE E.F. BODENE,
                                 CSR NO. 6926
     16

     17

     18

     19
                              Page 31

sacramento ruling.txt

20
21
22
23
24
25

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

30
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

sacramento ruling.txt

17

18

19

20

21

22

23

24

25

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360